**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0003837**
**25-AUG-2016**
**08:03 AM**

NO. CAAP-13-0003837

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
ROBERT DIEGO, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 11-1-0223)

SUMMARY DISPOSITION ORDER
(By:  Nakamura, C.J., Fujise and Leonard, JJ.)

Defendant-Appellant Robert Diego (Diego) appeals from a
Judgment of Conviction and Sentence entered on September 16,
2013, in the Circuit Court of the Third Circuit[1] (Circuit Court).
Judgment was entered against Diego after a jury found him guilty
of Attempted Murder in the Second Degree in violation of Hawaii
Revised Statutes (HRS) §§ 705-500(1)(b) & 707-701.5(1) (2014)[2]

---

[1]     The Honorable Greg K. Nakamura presided.

[2]     HRS § 705-500(1)(b) provides that

§705-500 **Criminal attempt.** (1) A person is guilty of an
attempt to commit a crime if the person:

.  .  .  .

(b) Intentionally engages in conduct which, under the
circumstances as the person believes them to be,
constitutes a substantial step in a course of conduct
intended to culminate in the person's commission of
the crime.

HRS § 707-701.5(1) provides that "[e]xcept as provided in section
707-701, a person commits the offense of murder in the second degree if the
person intentionally or knowingly causes the death of another person."

(Count I), and Robbery in the First Degree in violation of HRS § 708-840(1)(a) (Supp. 2012)[3] (Count II).[4]

On appeal, Diego contends that the Circuit Court erred in (1) denying his motion to change venue; (2) denying his requests to ask the complaining witness (CW) certain questions about a prior bad act and his sexual orientation; (3) making certain findings of fact (FOF) and conclusions of law (COL) amounting to a determination that a statement by Diego to a pretrial service officer was voluntary;[5] and (4) denying Diego's motion for new trial.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Diego's points of error as follows and affirm.

**1. Motion to Change Venue.** The Circuit Court did not abuse its discretion in denying Diego's motion to change venue pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 21.[6]

Diego contends that the Circuit Court's denial of his motion deprived him of an impartial jury due to extensive media

---

[3]    HRS § 708-840(1)(a) provides that

**§708-840 Robbery in the first degree.** (1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:

    (a) The person attempts to kill another or intentionally or knowingly inflicts or attempts to inflict serious bodily injury upon another[.]

[4]    Diego was also charged via indictment with Assault in the First Degree in violation of HRS § 707-710 (2014) (Count III). However, the jury was instructed that it should only reach Count III if and only if the jury found Diego not guilty of, or it could not reach a verdict on, Count I.

[5]    Diego challenges FOF no. 34 and COL nos. 1 and 6 of the Circuit Court's "Findings of Fact, Conclusions of Law and Order Granting State's Motion to Determine Voluntariness of Statements by Defendant Robert Diego to: 1. Officer Casey Cabral, 2. Officer Krystal Kekela, and Lisa Jobes" entered November 8, 2012.

[6]    HRPP Rule 21(a) provides that a trial court, "shall transfer the proceeding . . . to another circuit . . . if the court is satisfied that there exists in the circuit where the prosecution is pending so great a prejudice against the defendant that the defendant cannot obtain a fair and impartial trial in the circuit."

2

coverage of this case, as well as other cases involving Diego.[7] Diego's argument on appeal focuses almost exclusively on the asserted pervasive notoriety arising from allegations in 2002-2003 that a mortuary owned by Diego and his family buried bodies in bags or directly in the ground, and not in the caskets sold for the deceased.

This situation does not rise to the "extreme situations" described in State v. Pauline, 100 Hawai'i 356, 60 P.3d 306 (2002), because it does not "present a substantial threat to the defendant's right to a fair trial." Id. at 366, 60 P.3d at 316.

In support of his motion, Diego submitted a total of twelve articles, only five of which were published in 2011 or 2012, and none of which appeared after October 2012. Jury selection began on April 30, 2013. Thus, there was no "barrage of inflammatory publicity immediately prior to trial amounting to a huge . . . wave of public passion." Id. (citation omitted).

The Hawai'i Supreme Court has also "clarified that 'extensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair.'" Id. (citation omitted). The five articles published after 2011 offer factual accounts of Diego's alleged crimes and were largely neutral. Thus, although the articles reference the mortuary issue and three of the articles include quotes from the CW in the instant case, we cannot conclude that such coverage amounts to the types of "extreme situations" described in Pauline. See id. at 367, n.7, 60 P.3d at 317, n.7 (dismissing any damaging effect from published statements that the defendant was a "convicted sex offender," "a liar, a thief and a spoiled little brat" and a "walking crime wave").

Even assuming the articles were inflammatory and prejudicial, this court must examine "the jury selection process

_____

[7] Regarding Diego's argument that the Circuit Court erred in not authorizing money to conduct a poll of potential jurors to reveal prejudice in the community, Diego cites no authority that demonstrates the Circuit Court abused its discretion in denying such a request. Therefore, we find this argument without merit.

to determine whether the trial judge took sufficient steps to shield the proceedings from the prejudicial effect of the publicity." State v. Keohokapu, 127 Hawai'i 91, 103, 276 P.3d 660, 672 (2012) (citation and internal quotation marks omitted). Diego's only contention on appeal is that the Circuit Court's voir dire and questionnaires were inadequate to identify jurors "who would be purposefully attempting to get onto the jury panel out of bias or hatred" toward Diego. We note that the potential jurors took an oath to answer questions truthfully. Further, "[i]f the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain [a] jury trial under the conditions of the present day." Pauline, 100 Hawai'i at 366, 60 P.3d at 316 (citation and internal quotation marks omitted). In any event, our review of the transcripts demonstrates the Circuit Court adequately conducted voir dire into "the extent and nature of the specific matters of publicity to which jurors had been exposed." Id. at 368, 60 P.3d at 318 (citation and internal quotation marks omitted).

      2.   **The CW's Prior Bad Act & Sexual Orientation.** The Circuit Court (1) did not prejudicially err by limiting Diego's questioning of the CW regarding his 1971 conviction for second degree murder in the State of Missouri and (2) did not err in prohibiting questions regarding the CW's sexual orientation.

      a.   **Prior Bad Act.**

> "Prior bad act" evidence under Hawai'i Rules of Evidence (HRE) Rule 404(b) (1993) is admissible when it is 1) relevant and 2) more probative than prejudicial. A trial court's determination that evidence is "relevant" within the meaning of HRE Rule 401 (1993) is reviewed under the right/wrong standard of review. However, a trial court's balancing of the probative value of prior bad act evidence against the prejudicial effect of such evidence under HRE Rule 403 (1993) is reviewed for abuse of discretion.

State v. Torres, 85 Hawai'i 417, 421, 945 P.2d 849, 853 (App. 1997) (footnotes, citations, and internal quotation marks omitted).

      The Circuit Court ruled that Diego could introduce the CW's prior conviction in support of his self-defense claim, but could not delve into the crime's facts and circumstances. Diego asserts that he should have been able to develop the CW's

testimony during redirect because both the State and the CW opened the door to the details of the murder.

During redirect, the Circuit Court overruled the State's objection to Diego's question whether the CW's age (25) at the time of the murder made the murder "okay", noting only that the State opened the door to questions focusing on the time of the event. The Circuit Court struck only the CW's answer[8] to that question upon a different objection by the State. The Circuit Court suggested to Diego that he rephrase his question, not that he move on to a different subject. Diego then chose to ask only one question on a different topic.

The CW's answer that there were "extenuating circumstances" to the murder was stricken from the record.[9] Therefore, it was not unrebutted testimony as Diego contends. Diego also seems to contend that the State's cross-examination of the CW went unrebutted. However, again, it was Diego's choice to not rebut this testimony, as questions regarding whether the CW felt the murder was "okay" were not precluded by the Circuit Court's ruling. Diego was still able to place the fact of CW's prior murder conviction before the jury. To the extent Diego's ability to delve into the circumstances of that murder was limited, given the substantial age of the offense and apparently significant differences between the prior crime and the instant case, we conclude any error in limiting the examination was harmless.

b. **Sexual Orientation.** The Circuit Court denied Diego's request to inquire into the CW's sexual orientation because "the issue is the conduct of [the CW] to the extent that Mr. Diego seeks to assert self-defense[, n]ot [the CW's] sexuality" and such a question potentially violates the CW's

---

[8]    The CW answered: "There [sic] extenuating circumstances. If you want me to go into it, I will."

[9]    Diego asserts in passing that the Circuit Court's decision to strike the CW's response as nonresponsive was in error. However, Diego makes no substantive argument in regards to this contention, and thus does not carry his burden to demonstrate that an error has occurred. See Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error[.]" (citations and internal quotation marks omitted)).

constitutional right to privacy. Evidence must be relevant to be admissible. HRE Rule 402. To be relevant, evidence must tend to make a fact of consequence more or less probable. HRE Rule 401.

Diego testified at trial that he struck the CW with a hammer because he was scared due to the CW's alleged sexual advances and that his first thought was that the CW was going to sexually assault or hurt him. Diego was not, however, permitted to ask the CW about the CW's sexual orientation. We conclude that a person's sexual orientation has no bearing on and is not relevant to whether the person would be more likely to commit or attempt a sexual assault. Diego cites no authority indicating that the CW's sexual orientation is relevant to whether Diego's actions constituted self-defense,[10] and there is persuasive authority to the contrary. United States v. Bautista, 145 F.3d 1140, 1151-52 (10th Cir. 1998) (the right to present defense witnesses is subject to standards of relevance and materiality; testimony of complaining witness's homosexuality "was irrelevant and potentially highly prejudicial" to the murder charge or to a defense of "heat of passion"); United States v. Whalen, 940 F.2d 1027, 1034 (7th Cir. 1991) (the trial court did not abuse its discretion in excluding evidence of the victim's prior homosexual behavior because nothing about the proffered evidence suggested that the victim intended to sexually assault Whalen); Maiorino v. Scully, 746 F. Supp. 331, 334 (S.D.N.Y 1990) (insufficient evidence to warrant jury instruction on sodomy "justification";

---

[10]   Under HRS § 703-304 (2014), Diego must have "reasonably believed" deadly force was necessary to protect himself against "death, serious bodily injury, kidnapping, rape, or forcible sodomy." State v. Lubong, 77 Hawai'i 429, 433, 886 P.2d 766, 770 (App. 1994).

"Deadly force" is defined as

> force which the actor uses with the intent of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Intentionally firing a firearm in the direction of another person or in the direction which another person is believed to be constitutes deadly force. A threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's intent is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.

Id. at 432, 886 P.2d at 769 (emphasis and citation omitted).

"evidence that [victims] were homosexuals simply is not sufficient to support a reasonable inference that they intended to sodomize [defendants] forcibly"). Thus, whether the CW self-identifies as gay was irrelevant.

3. **Diego's Statement to Jobes.** The Circuit Court did not err when it allowed Lisa Jobes (Jobes), a pretrial service officer employed by the Department of Public Safety, to testify regarding a statement that Diego allegedly made during a pretrial release interview[11] conducted while Diego was in custody.[12]

Diego challenges the circuit court's FOF no. 34 and COLs nos. 1 and 6 that concluded his statement was not the result of custodial interrogation.[13] Diego's only argument is that Jobes is an agent of the State who reports in-custodial statements to the police, thus her question constitutes custodial interrogation.

Even assuming Jobes was acting on behalf of the police, her question was not reasonably likely to elicit an incriminating

---

[11] Diego allegedly said: "Uh, no, thank you, Miss, I don't want to be released. And bail is not a factor to me. What I did was wrong, and I'm just going to go to court and ask to be placed at H triple C."

[12] In his opening brief, Diego's argument is substantively founded in the Fifth Amendment of the United States Constitution, yet Diego only cites to the Sixth Amendment and Article I, Section 14 of the Hawai'i State Constitution rights to the assistance of counsel. See State v. Luton, 83 Hawai'i 443, 452-53, 927 P.2d 844, 853-54 (1996) (delineating the difference between a Sixth Amendment and a Fifth Amendment analysis, and noting that combining the two presents a flaw in the appellant's argument). We also note that the challenged statements were made before Diego was indicted. At trial, Diego made a Fifth Amendment argument, and the trial court analyzed the issue within that framework. Thus, we only address Diego's challenge within the Fifth Amendment framework.

[13]

### FINDINGS OF FACT

34.  Ms. Jobes was not a police officer or acting on behalf of the police and just asked whether or not Defendant was going to apply for pretrial release.

### CONCLUSIONS OF LAW

1.  The Statements made by the defendant were not the subject of custodial interrogation and statements were voluntarily made by the Defendant.

. . . .

6.  Ms. Jobes [sic] question to the Defendant whether or not he was going to apply for pretrial release was not a question that leads one to believe that it would lead to an inculpatory statement by the Defendant.

response from Diego, and thus was not interrogation.[14]  State v. Ikaika, 67 Haw. 563, 567, 698 P.2d 281, 284 (1985).  COL no. 6 is not wrong.

Therefore, Diego has not demonstrated that the Circuit Court erred in concluding in COL no. 1 that Diego's statement to Jobes was not the subject of custodial interrogation.

4.  **Motion for New Trial.**  Diego has failed to demonstrate the Circuit Court abused its discretion denying his motion for new trial.  On appeal, Diego presents no substantive argument besides referencing his argument on appeal related to the CW's prior bad act and sexual orientation.  Diego cites no legal authority to suggest a trial court should grant a new trial in this instance.  Furthermore, for the reasons stated above, Diego has not demonstrated that the Circuit Court prejudicially erred in its ruling on questions related to the CW's prior bad act and sexual orientation.

IT IS HEREBY ORDERED that the Judgment of Conviction and Sentence entered on September 16, 2013, in the Circuit Court of the Third Circuit is affirmed.

DATED:  Honolulu, Hawai'i, August 25, 2016.

On the briefs:

William B. Heflin and
Brian J. De Lima,
for Defendant-Appellant.

Chief Judge

Patricia A. Loo,
Deputy Prosecuting Attorney,
County of Hawai'i
for Plaintiff-Appellee.

Associate Judge

Associate Judge

---

[14]  According to her testimony, Jobes asked Diego "[i]f he would be interested in applying for a bail study report for his hearing."